**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
ESTANISLAO MARTIN PEREZ LOPEZ,  OMAR :
PEREZ SANCHEZ, and FLOR DE MARIA       :          Civil Docket No.
RUANO,                                                        :
                                                                    :          **COMPLAINT**
                                   Plaintiffs,              :
                                                                    :
                                 - against -               :
                                                                    :
LUCERO PRODUCE II CORP. and SAUL    :
LUCERO,                                                     :
                                                                    :
                                  Defendants.            :
------------------------------------------------------------X

## NATURE OF THE ACTION

1.       Plaintiffs Estanislao Martin Perez Lopez, Omar Perez Sanchez, and Flor de Maria

Ruano (collectively "Plaintiffs") bring this action against Defendants Lucero Produce II Corp.

and Saul Lucero (collectively "Defendants") to seek redress for violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and New York Labor Law ("NYLL") §§ 195,

215, 652 and applicable regulations, 12 NYCRR §§ 142 *et seq*.

2.       Despite the Plaintiffs regularly working between 50 and 101.5 hours per week at a

wholesale produce market and warehouse owned and operated by Defendants, Defendants

unlawfully paid them less than the state-mandated minimum wage, and failed to pay them any

overtime premium for hours worked over forty in a week.  Defendants also failed to provide

Plaintiffs with legally-required wage notices and wage statements.  In addition, when Plaintiff

Flor de Maria Ruano complained about Defendants' pay practices and retained a lawyer to help

her negotiate a fair payment of wages owed to her, Defendants retaliated against her, first

1

reducing her hours, and then firing her, telling her she was like a "cancer" that spread to other workers at the business.

3.      Plaintiffs bring this action to remedy the Defendants' failure to pay overtime wages in violation of the FLSA and NYLL; failure to pay the New York State minimum wage and provide legally-required hiring and wage statements, in violation of the NYLL and applicable regulations; and unlawful retaliation against Plaintiff Ruano, in violation of the FLSA and NYLL.

4.      Plaintiffs seek declaratory relief, unpaid wages for work performed, liquidated and statutory damages, back pay, damages for emotional distress, punitive damages, and other appropriate relief pursuant to the FLSA and NYLL, as well as reasonable attorneys' fees, costs, and pre- and post-judgment interest.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over Plaintiffs' FLSA claims set forth herein pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because these claims involve federal questions regarding the deprivation of their rights under federal law.

6.      This Court has supplemental jurisdiction over the NYLL claims set forth herein pursuant to 28 U.S.C. § 1367, because these claims closely relate to the federal claims under FLSA, having arisen from a common nucleus of operative facts, such that they form part of the same case or controversy.

7.      Defendants are subject to jurisdiction in New York because Defendant Lucero Produce II Corp. is a New York domestic business corporation with its principal place of business at 1250 Randall Avenue, Bronx, New York 10474, and Defendant Saul Lucero is the Chief Executive Officer of Lucero Produce II Corp.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred within the Southern District of New York and the Defendants operate their businesses therein.

## PARTIES

9.      Plaintiff Estanislao Martin Perez Lopez ("Mr. Perez Lopez") is a 47-year-old Mexican immigrant who lives in the Bronx with his family.

10.      Plaintiff Omar Perez Sanchez ("Mr. Perez Sanchez") is a 29-year-old Mexican immigrant who lives in the Bronx with his family.

11.      Plaintiff Flor de Maria Ruano ("Ms. Ruano") is a 37-year-old Guatemalan immigrant who lives in the Bronx with her family.

12.      Defendant Lucero Produce II Corp. ("Lucero Produce II") is a New York business corporation with its principal place of business at 1250 Randall Avenue, Bronx, New York 10474.

13.      Upon information and belief, Defendant Saul Lucero ("Mr. Lucero") is the Chief Executive Officer of Lucero Produce II, and his usual place of business is 1250 Randall Avenue, Bronx, New York 10474.  Mr. Lucero is sued in his individual capacity as Plaintiffs' employer.

14.      Upon information and belief, Lucero Produce II and Mr. Lucero own and operate Lucero Produce, a produce wholesaler located at 1250 Randall Avenue, Bronx, New York 10474.

15.      At all times relevant and material to this action, Defendants employed each Plaintiff to work at Lucero Produce, and were Plaintiffs' employers within the meaning of the FLSA and NYLL.

16.      As set forth below, and at all times relevant and material to this action, Defendants had the power to hire and fire the Plaintiffs, control the terms and conditions of their

3

employment, maintain employment records, and determine the rate and method of compensation provided to them.

17.     Upon information and belief, and as described below, Defendant Lucero Produce constitutes an enterprise engaged in commerce whose gross annual revenue is at least $500,000.

18.     As more fully set forth below, Plaintiffs were regularly involved in interstate commerce as Lucero Produce employees, including by driving Lucero Produce vehicles to deliver merchandise to neighboring states, making telephone calls to persons located outside of New York State, handling records of interstate transactions, and handling items that originated from out of state.

19.     In addition, as more fully set forth below, Plaintiffs handled goods and materials that moved in commerce and originated out of state, including merchandise, warehouse and maintenance equipment, and office supplies that originated out of state.

## STATEMENT OF FACTS

*Lucero Produce*

20.     Lucero Produce is a wholesale produce market and warehouse that imports, sells and delivers a variety of products, including fruits and vegetables, beverages, and canned and packaged food.  It also sells some non-food items such as soap and restaurant cleaning supplies.

21.     Upon information and belief, Lucero Produce imports many of its goods from outside of the United States.

22.     Lucero Produce sells its merchandise to supermarkets, grocery stores, and other establishments in New York City and outside of New York State, including New Jersey, Pennsylvania and Connecticut.

23.     Upon information and belief, CEO Saul Lucero maintains his regular place of business at Lucero Produce's main location, at 1250 Randall Avenue, Bronx, New York 10474.

24.     As CEO, Mr. Lucero exercises operational control and is directly involved in the day-to-day operations of Lucero Produce.

25.     Upon information and belief, Mr. Lucero employs his wife, Olivia Lucero, as well as several managers, Hector Huerta, Adelson [Last Name Unknown], Fabian [Last Name Unknown] and Fernando [Last Name Unknown] to direct Lucero Produce employees in their work.  Upon information and belief, Olivia, Hector, Adelson, Fabian and Fernando all report directly to Mr. Lucero, and require his authorization to make personnel decisions.

26.     Lucero Produce is open seven days per week, and from Monday through Thursday, it is open 24 hours a day.

27.     Upon information and belief, and at all times relevant and material to this action, Defendants employed approximately thirty people to work at Lucero Produce, including warehouse workers, billing assistants, managers, sales representatives, cashiers, truck drivers, delivery assistants, office workers and janitorial workers.

*Plaintiff Estanislao Martin Perez Lopez*

28.     In or around March 4, 2017, Mr. Lucero hired Mr. Perez Lopez to work as a warehouse worker and delivery assistant at Lucero Produce.

29.     As a warehouse worker, Mr. Perez Lopez's regular duties included helping unpack deliveries that arrived at the warehouse, packing merchandise for shipment, assisting clients with product orders, and rearranging or organizing merchandise inside the warehouse.

30.     As a delivery assistant, Mr. Perez Lopez was responsible for helping load Lucero Produce delivery trucks, accompanying the drivers who transported the products in those trucks, and helping unload those products from the trucks upon arrival at their delivery destinations.

31.     Mr. Lucero regularly directed Mr. Perez Lopez's work and determined the terms and conditions of his employment. For example,when Mr. Lucero was present in the warehouse,

approximately once or twice per week, he would tell Mr. Perez Lopez if a delivery had arrived and direct him as to where to place the merchandise or how to organize it. Mr. Lucero is the one who spoke to Mr. Perez Lopez to discuss any changes in his schedule. In addition, he was frequently the one to collect and deliver Mr. Perez Lopez's weekly pay.

32.     Mr. Perez Lopez understood at all times that Mr. Lucero was the boss and made the decisions about employees' schedules, pay, and the other terms and conditions of their job. Even when Mr. Perez Lopez was directed in his work by Hector Huerta, it was clear to him that Mr. Huerta answered to Mr. Lucero.

33.     Mr. Perez Lopez regularly worked seven days per week.  Although his schedule varied during his employment, he generally worked from 8 a.m. to 2 or 3 a.m. from Tuesdays through Fridays, with a 30-minute meal break each day; from 8 a.m. to 6 p.m. on Saturdays, with a 30-minute meal break; and from 6 p.m. to 2 or 3 a.m. on Sundays and Mondays. As a result, he worked approximately 101.5 hours per week.

34.     When he was hired, Mr. Lucero told Mr. Perez Lopez he would be paid a flat rate of $100 per day shift (the ten-hour shifts that took place from 8 a.m. to 6 p.m.), plus an extra $60 for any night shifts he covered (the eight or nine-hour shifts that took place from 6 p.m. to 2 or 3 a.m.). His weekly rate came out to $860 per week.

35.     Mr. Perez Lopez's hourly rate for this period thereby came out to approximately $8.47 per hour.

36.     As a result, Mr. Perez Lopez's actual hourly rate was well below the New York State minimum wage, which was $11 in 2017 for employers of 11 or more employees.

37.     At no time during Mr. Perez Lopez's employment did he receive overtime pay for his hours worked in excess of forty in one week.

38.     At no time during Mr. Perez Lopez's employment did he receive an extra hour of pay at the state minimum wage rate when he worked a shift longer than ten hours.

39.     Mr. Perez Lopez was required to punch in and out at the start and end of his shifts.

40.     Throughout his employment with Lucero Produce, Mr. Perez Lopez was paid in cash, either by Mr. Lucero or by Lucero Produce's accountant, Anel [Last Name Unknown], every Monday.

41.     When he received his pay, Mr. Perez Lopez was required to sign his name on his timecard, listing the dates and hours worked

42.     Mr. Perez Lopez left his job at Lucero Produce on or around December 23, 2017.

43.     Upon information and belief, throughout his entire employment with Lucero Produce, Mr. Perez Lopez was regularly involved in interstate commerce and handled goods and materials that moved in interstate commerce and that originated out of state.  For example, he regularly accepted deliveries and stocked packaged food products, and carried and packaged food products that had originated out of state.

***Plaintiff Omar Perez Sanchez***

44.     In or around November 2011, Mr. Lucero hired Mr. Perez Sanchez to work as a warehouse worker at Lucero Produce.

45.     As a warehouse worker, Mr. Perez Sanchez's regular duties included helping unload and unpack deliveries that arrived at the warehouse, packing merchandise and loading it onto trucks for deliveries, assisting clients with product orders, and rearranging or organizing merchandise inside the warehouse.

46.     Mr. Lucero regularly directed Mr. Perez Sanchez's work and determined the terms and conditions of his employment. For example, whenever Mr. Lucero was present in the

warehouse, he told Mr. Perez Sanchez which deliveries to help with, where to place the merchandise, and which clients to attend to. In addition, Mr. Lucero was responsible for communicating any changes in Mr. Perez Sanchez's hours, and he was frequently the one in charge of providing him with his weekly pay. Mr. Perez Sanchez understood at all times that Mr. Lucero was the boss and made the decisions about employees' schedules, pay, and the other terms and conditions of their job. Even when Mr. Perez Sanchez was directed in his work by Hector Huerta, Adelson or Fabian, it was clear to him that all of these managers answered to Mr. Lucero and carried out his orders.

47.     From November 2011 until the end of 2013, Mr. Perez Sanchez worked five days per week, approximately 13 to 14 hours per day. In 2011, he worked Mondays through Fridays, from midnight until 1 or 2 p.m. each day. Beginning in 2012 until the end of 2013, Mr. Lucero changed Mr. Perez Sanchez's schedule so that he no longer worked Wednesdays, instead working Saturdays from midnight until 1 or 2 p.m. His schedule for the remaining days of the week stayed the same.

48.     Despite working approximately 65 to 70 hours per week, Mr. Perez Sanchez was paid a flat rate of $450 per week from November 2011 until the end of 2013. Mr. Perez Sanchez's hourly rate thereby came out to between $6.43 and $6.92 per hour.

49.     As a result, Mr. Perez Sanchez's actual wages were well below the New York State minimum wage in effect at the time, which from November 2011 until 2013, ranged from $7.25 to $8.00 per hour.

50.     In or around the beginning of 2014, Mr. Lucero promoted Mr. Perez Sanchez to the position of delivery assistant. As a delivery assistant, Mr. Perez Sanchez was responsible for helping load Lucero Produce delivery trucks, accompanying the drivers who transported the

products in those trucks, and helping unload those products from the trucks upon arrival at their delivery destinations.

51.     In that new role, from 2014 until the beginning of 2017, Mr. Perez Sanchez continued to work five days per week, 13 to 14 hours per day, but was paid a higher weekly wage of $500 per week.  His schedule was from Monday through Friday, from 5 a.m. until 6 or 7 p.m. each day.

52.     Mr. Perez Sanchez's hourly rate for this period thereby came out to between $7.14 and $7.69 per hour.

53.     As a result, Mr. Perez Sanchez's hourly rate was below the New York State minimum wage, which ranged from $8.00 to $11.00 per hour during this time period.

54.     In the beginning of 2017, Mr. Lucero changed Mr. Perez Sanchez's schedule to two weekly shifts of 16 to 17 hours, and three weekly shifts of nine or ten hours, for a total of approximately 64 hours per week. Along with the schedule change, Mr. Lucero raised Mr. Perez Sanchez's pay to a flat rate of $700 per week.

55.     Mr. Perez Sanchez's hourly rate for this period thereby came out to approximately $10.94 per hour.

56.     As a result, Mr. Perez Sanchez's hourly rate was below the New York State minimum wage, which was $11.00 per hour in 2017 for employers of 11 or more employees.

57.     In or around mid-2017, Mr. Lucero promoted Mr. Perez Sanchez to the position of truck driver, but kept his pay rate and weekly schedule the same.

58.     In or around October or November 2018, Mr. Lucero raised Mr. Perez Sanchez's pay to $800 per week, and lowered his weekly hours to 48 hours per week (six days per week, eight hours per day).

59.     At no time prior to Defendants' changing Mr. Perez Sanchez's rate of pay did he receive a written notice informing him of the change in his pay.

60.     At no time during Mr. Perez Sanchez's employment did he receive overtime pay for his hours worked in excess of forty per week.

61.     At no time during Mr. Perez Sanchez's employment did he receive an extra hour of pay at the state minimum wage rate when he worked a shift longer than ten hours.

62.     Mr. Perez Sanchez was required to punch in and out at the start and end of his shifts.

63.     Throughout his employment with Lucero Produce, Mr. Perez Sanchez was paid in cash every Monday, sometimes by Mr. Lucero, and other times by Fernando.

64.     When he received his pay, Mr. Perez Sanchez was required to sign his name on his timecard, listing the dates and hours worked

65.     Mr. Perez Sanchez left his job at Lucero Produce at the end of June 2019, but decided to return to the job in or around July 30, 2019.

66.     At that time, Mr. Lucero presented Mr. Perez Sanchez with a document, written in English, purporting to be an employment contract.  Among other things, the contract stated that Mr. Perez Sanchez agreed to work five days per week at a rate of $17.50 per hour for a maximum of forty hours per week, and that the contract would commence on July 30, 2019.

67.     Among other things, the document included a plainly illegal contract term, limiting Mr. Perez Sanchez to only two paid sick days per year.  The New York City Earned Safe and Sick Time Act, N.Y.C. Admin. Code § 20-911 *et. seq.* required Defendants to allow Mr. Perez Sanchez to take up to forty hours of paid sick leave per year, once he had worked for Lucero Produce for eighty hours in a given year.

10

68.     Mr. Perez Sanchez did not sign the above-mentioned contract, but did go back to work at Lucero Produce.

69.     Upon his return to work in July 2019, Mr. Perez Sanchez's hours and schedule remained the same. He worked 48 hours per week (six days per week, eight hours per day) and received $800 in pay per week.

70.     At the end of August 2019, Mr. Perez Sanchez was fired from his job by Mr. Lucero, for arriving late to work one day.

71.     As a delivery assistant and truck driver, Mr. Perez Sanchez regularly transported merchandise to customers in New Jersey, as well as within New York City.  Upon information and belief, those goods had been imported by Lucero Produce primarily from Mexico, before being sold and delivered to Lucero Produce customers.

72.     As described above, throughout his entire employment with Lucero Produce, Mr. Perez Sanchez was regularly involved in interstate commerce and handled goods and materials that moved in interstate commerce and that originated out of state.  For example, as a warehouse worker, he regularly accepted deliveries and stocked packaged food products, and carried and packaged food products that had originated out of state.  In addition, as a delivery assistant and truck driver, he regularly traveled outside of New York State and transported goods that had been imported from Mexico.

***Plaintiff Flor de Maria Ruano***

73.     On or around July 1, 2017, Ms. Ruano was hired to work as a billing assistant at Lucero Produce.  She was hired by Ms. Lucero and Mr. Lucero's nephew, Adelson.  She began working on or around July 8, 2017.

74.     As a billing assistant, Ms. Ruano's regular duties included working at the counter, taking orders from customers, generating invoices, and providing receipts.

11

75.     Sometimes when it was not too busy at the counter, Mr. Lucero, Hector, Olivia or Adelson would ask her to do other things, such as weighing certain items, including candy, nuts, seeds, corn, salt, and other grains.

76.     Mr. Lucero regularly directed the terms and conditions of Ms. Ruano's employment.  For example, he set her schedule and regularly made changes to it.  He also set her rate of pay.  In addition, whenever he was present at the warehouse, he would supervise Ms. Ruano's work by directing her to attend to a given customer, or instructing her to weigh certain merchandise as needed. If he was not physically present, Mr. Lucero would convey his orders through Hector and Adelson, who would communicate them to Ms. Ruano.

77.     From July 2017 until around August 19, 2018, Ms. Ruano regularly worked six days per week, ten hours per day, with Friday as her day off.  Although her hours sometimes varied, for the most part she worked sixty hours per week.

78.     Mr. Lucero changed Ms. Ruano's work hours over the course of her time at Lucero Produce.  At the beginning, he had her work from 8 a.m. until 6 p.m.  Later, he gradually pushed back her start time so that her schedule went from daytime to overnight hours.  Her schedule shifted from 10 a.m. until 8 p.m. to 12 p.m. until 10 p.m., and then later to 4 p.m. until 2 a.m., and finally to 7 p.m. until 6 a.m.

79.     When she was hired, Ms. Lucero told Ms. Ruano that she would be paid $11.00 per hour, which was the legal minimum wage rate in New York for employers of 11 or more employees.

80.     However, from July 4, 2017 until August 19, 2018, she was paid a flat rate of $600 per week.

81.     Ms. Ruano's hourly rate for this period thereby came out to $10 per hour, well below the applicable New York State minimum wage, which ranged from $11 to $13 per hour during this time period.

82.     At no time during Ms. Ruano's employment did she receive an overtime premium for any hours over forty in a week.

83.     At no time during Ms. Ruano's employment did she receive an extra hour of pay at the state minimum wage rate for any shifts exceeding ten hours.

84.     Ms. Ruano was required to punch in and out at the start and end of her shifts.

85.     Ms. Ruano generally received her pay in cash on Mondays from Lucero Produce's accountant, Anel.  When she received her pay, Ms. Ruano was required to sign her name on her timecard, listing the dates and hours worked.

***Ms. Ruano's Complaints about Her Pay, and Defendants' Falsification of Pay Records***

86.     Ms. Ruano complained to the Defendants about her pay on several occasions.

87.     After her first week of work, Ms. Ruano received her pay and noticed that it came out to only $10 per hour.  She asked Ms. Lucero why she was not paid $11 per hour, and Olivia Lucero told her that Mr. Lucero said that he could not pay her that rate, because she was only just learning how to do her job.  Ms. Lucero assured Ms. Ruano that her husband, Mr. Lucero, would increase her pay to $11 per hour after she had worked there for two months.  That did not happen.

88.     Ms. Ruano also asked Adelson whether she could get a raise in her pay.  Adelson told her she would need to speak with Ms. Lucero.

89.     About a year into her job, in or around July 2018, Ms. Ruano spoke directly with Mr. Lucero about her pay, and asked him for an increase to the minimum wage.  He told her to

wait, and stated words to the effect that he would address the problem.  About two or three

weeks later, she asked him again, and he again told her he would address the issue.

90.     On or around August 12, 2018, Mr. Lucero summoned Ms. Ruano to his office so

they could discuss her pay.

91.     During their conversation, Ms. Ruano complained that she had been at Lucero

Produce for a year, and had not been paid what she had been offered when she was hired.  In

response, Mr. Lucero told Ms. Ruano that she would receive an increase to $12 per hour to

compensate her for the year of work during which she was not paid $11 per hour.  He also told

her he would give her an opportunity to learn to work in the Lucero Produce office.

92.     Mr. Lucero presented Ms. Ruano with a document purporting to be an

employment contract, that said, among other things, that she agreed to work forty hours a week,

for $12 per hour.

93.     At the time, the New York State minimum wage in effect for employers of 11 or

more employees was $13 an hour.

94.     Despite the purported terms of the contract, Mr. Lucero verbally informed Ms.

Ruano that she would continue to work sixty hours per week, but would be paid $12 per hour for

each hour worked.  Mr. Lucero told her that he would pay her for the first forty hours by check,

and the remaining twenty hours in cash.

95.     The contract presented to Ms. Ruano included a plainly illegal term limiting Ms.

Ruano to only two paid sick days per year.  The New York City Earned Safe and Sick Time Act,

N.Y.C. Admin. Code § 20-911 *et. seq.* required Defendants to allow her to take up to forty hours

of paid sick leave per year once she had worked for Lucero Produce for eighty hours in a given

year.

14

96.     Ms. Ruano needed her job, and wanted a pay raise, so she signed the contract that day without further negotiation.

***Defendants Retaliate Against Ms. Ruano for Complaining and for Seeking Legal Assistance to Recover Unpaid Wages***

97.     Despite Mr. Lucero's promises, Ms. Ruano did not immediately receive a raise to $12 per hour after signing the contract.

98.     For the pay period from August 14 to August 20, 2018, Ms. Ruano worked approximately 55 hours, but was paid only $10 per hour for all hours worked.

99.     The following week, Ms. Ruano's pay went up to $12 per hour, but Mr. Lucero reduced her weekly hours, first to 52 hours per week, and then to 50 hours per week.

100.    On or around September 13, 2018, Ms. Ruano retained the New York Legal Assistance Group ("NYLAG") to represent her in a negotiation of her unpaid wages.

101.    On or around October 2, 2018, NYLAG sent Defendants a demand letter asserting claims on Ms. Ruano's behalf, and inviting them to negotiate a resolution.

102.    Approximately one week later, on or before October 9, 2018, Ms. Ruano was called into a meeting with a man named Pedro, in the Lucero Produce office.  Pedro introduced himself to Ms. Ruano as someone who was in charge of personnel.  He told her that Lucero Produce would pay her $13 per hour, and that she was the only worker that would receive that rate of pay.  He also told her she would be working forty hours per week going forward.  Pedro presented her with a document that appeared to her to be an employment contract.  Ms. Ruano signed, but was not given a copy or given a chance to read the document.

103.    During that meeting Pedro also required Ms. Ruano to sign a copy of a written warning for coming to work late, even though the referenced lateness itself had occurred five months prior to being presented with this disciplinary note.

104.    Upon information and belief, Ms. Ruano was the only employee whose hours were reduced at that time.

105.    At no time prior to Defendants' changing Ms. Ruano's rate of pay did she receive an accurate written notice informing her of a change in her pay.

106.    Shortly after, on or around October 17, 2018, Ms. Ruano was fired from her job at Lucero Produce.  On that day, Pedro called her into the office and said that the Lucero Produce had decided they no longer needed her services.  He told her that workers like her were a "cancer" that spread to others at work.  Pedro handed her a document and said that he could offer her a separation payment of $7,000 plus four weeks' pay, and told her that Mr. Lucero was being "generous."  Pedro also told Ms. Ruano that she would need to promise not to work for any competitors of Lucero Produce for two years, and that if Mr. Lucero learned that she had worked for such competitors, he could interfere with her job.

107.    Ms. Ruano took the document but did not sign it.  She was certain that she had been fired that day because she had complained about her pay, given her lack of performance issues, and Pedro's comments to her.  Ms. Ruano returned to work the following Monday, to pick up her final wages.

108.    Ms. Ruano was emotionally distraught as a result of her firing.  She began experiencing difficulty sleeping, hair loss, and symptoms of depression.

109.    Upon information and belief, "Pedro" was an individual named Pedro Rosales, who at that time was the Chief Operating Officer of Lucero Produce.

110.    Upon information and belief, Mr. Lucero directed Mr. Rosales to reduce Ms. Ruano's hours following her complaints about her pay, and to prepare the employment contract Ms. Ruano signed on or around October 9, 2018.

111.    Upon information and belief, Mr. Lucero directed Mr. Rosales to fire Ms. Ruano and prepare the separation agreement presented to her on October 17, 2018.

112.    Upon information and belief, Mr. Lucero fired Ms. Ruano as a direct result of her complaints about her pay and her having consulted with and retained an attorney to help recover her unpaid wages.

113.    At no time during Ms. Ruano's employment did she receive overtime pay for her hours worked in excess of forty in one week.

114.    At no time during Ms. Ruano's employment did she receive an extra hour of pay at the New York State minimum wage rate when she worked a shift longer than ten hours.

115.    Upon information and belief, throughout her entire employment with Lucero Produce, Ms. Ruano was regularly engaged in interstate commerce and handled goods and materials that moved in interstate commerce.  For example, she regularly made telephone calls to out-of-state customers seeking to purchase Lucero produce, and used calculators, a credit card machine, and a computer that originated out of state.

***Defendants' Failure to Comply with Relevant Wage and Hour Laws and Regulations***

116.    Defendants failed to inform the Plaintiffs of their right to be paid for every hour worked, or of their right to be paid overtime pay for hours worked over forty in one week.

117.    Defendants failed to maintain displays or postings on the premises of the workplace informing Plaintiffs of their right to minimum wage and overtime payments.

118.    Defendants did not pay Plaintiffs the state's statutorily-mandated minimum wage rate for all hours worked.

119.    Defendants did not pay Plaintiffs an overtime premium of one-and-a-half times the minimum wage rate for hours worked in excess of forty in one week.

120.   Defendants did not pay Plaintiffs an extra hour of pay at the state minimum wage rate when they worked a shift longer than ten hours.

121.   Defendants did not provide Plaintiffs, within ten days of hiring, with written statements setting forth information about their rates of pay, and other information required by the New York State Wage Theft Prevention Act ("WTPA"), NYLL § 195(1).

122.   Defendants did not provide Plaintiffs with written statements informing them of Defendants' intention to change their rates of pay seven calendar days prior to changing their rates of pay, as required by the WTPA, NYLL § 195(2).

123.   Defendants did not provide Plaintiffs with accurate written wage statements disclosing legally-required information, including the dates of work covered by a payment of wages, Plaintiffs' regular and overtime rates of pay, and  the number of regular and overtime hours worked in that pay period, as required by the WTPA, NYLL § 195(3).

124.   Upon information and belief, Defendants knowingly, intentionally, and willfully committed the acts alleged herein.

### **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**
**(Unpaid Overtime Wages)**
**(Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*)**

125.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

126.   Defendants failed to pay Plaintiffs overtime wages for hours worked in excess of forty hours per week at a wage rate of one-and-a-half times either their regular rate of pay or the minimum wage rate to which they were entitled, whichever was higher, in violation of 29 U.S.C. § 207(a)(1).

127.     As a result of those violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of this action, all in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### (Unpaid Minimum Wages)
### (New York Labor Law § 652(1); 12 New York Codes, Rules and Regulations § 142-2.1)

128.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

129.     Defendants failed to pay Plaintiffs the applicable hourly minimum wage for all hours worked, in violation of New York Labor Law § 652(1) and applicable regulations.  As a result of those violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of this action, all in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (Unpaid Overtime Wages)
### (New York Labor Law § 652; 12 New York Codes, Rules and Regulations § 142-2.2)

130.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

131.     Defendants failed to pay Plaintiffs overtime wages for hours worked in excess of forty hours per week at a wage rate of one-and-a-half times either their regular rate of pay or the minimum wage to which they were entitled to receive under NYLL § 652, in violation of 12 NYCRR § 142-2.2.

132.     As a result of those violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an equal amount in the form of liquidated

damages, as well as reasonable attorneys' fees and costs of this action, all in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Failure to Provide Wage Statements Upon Hiring and Upon Changes in Pay)
### (New York Labor Law §§ 195(1), (2))

133.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

134.     Defendants failed to furnish Plaintiffs with notices within ten days of hiring, in English or the language identified by Plaintiffs as their primary language, that contained Plaintiffs' rates of pay and basis thereof, along with other legally-required information.

135.     Defendants failed to furnish Plaintiffs with notices at least seven calendar days prior to changing Plaintiffs' rates of pay, in English or in the language identified by each Plaintiff as their primary language.

136.     As a result of those violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, statutory penalties of $50 per workday for each day Defendants failed to provide such notices, up to $5,000 per Plaintiff.

## FIFTH CAUSE OF ACTION
### (Failure to Provide Accurate Wage Statements)
### (New York Labor Law § 195(3); 12 New York Codes, Rules and Regulations §§ 142-2.7)

137.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

138.     Defendants failed to furnish Plaintiffs with a statement with every payment of wages, listing, among other information:  the dates of work covered by that payment of wages; Plaintiffs' regular and overtime rates of pay; and  the number of regular and overtime hours worked.

139.     As a result of those violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, statutory penalties of $250 per workday for each day Defendants failed to provide such statements, up to $5,000 per Plaintiff.

## SIXTH CAUSE OF ACTION
### (Failure to Pay Spread-of-Hours Pay)
### (New York Labor Law § 652; 12 New York Codes, Rules and Regulations § 142-2.4)

140.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

141.     Defendants failed to pay Plaintiffs additional compensation of one hour of pay at the state minimum wage hourly rate for each day where the length of the interval between the beginning and end of their workday – including working time plus time off for meals – was greater than ten hours.

142.     As a result of those violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid spread-of-hours wages, and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of this action, all in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### (Retaliation as to Plaintiff Ruano)
### (Fair Labor Standards Act, 29 U.S.C. § 215(a)(3))

143.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

144.     Defendants penalized or otherwise discriminated against Plaintiff Flor de Maria Ruano by reducing her hours and firing her because she complained about Defendants' pay practices, including their failure to pay her the state minimum wage, and because she sought legal assistance to resolve her complaints.

145.     As a result of those violations, Plaintiff Flor de Maria Ruano is entitled to recover from Defendants, jointly and severally, damages for emotional distress and punitive damages, along with reasonable attorneys' fees and costs of this action, all in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Retaliation as to Plaintiff Ruano)**
**(New York Labor Law § 215)**

146.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

147.     Plaintiffs have duly advised the Attorney General of the State of New York of the filing of a retaliation claim pursuant to N.Y. Labor Law § 215(2)(b).

148.     Defendants penalized or otherwise discriminated against Plaintiff Flor de Maria Ruano by reducing her hours and firing her because she complained about Defendants' pay practices, including their failure to pay her the state minimum wage.

149.     As a result of those violations, Plaintiff Flor de Maria Ruano is entitled to recover from Defendants, jointly and severally, liquidated damages in an amount not greater than $20,000.00, reasonable attorneys' fees, and costs of this action, all in an amount to be determined at trial.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment:

1.     Declaring Defendants' acts, practices, and omissions complained of herein to be in violation of Plaintiffs' rights under FLSA and NYLL and applicable regulations;

2.     Directing Defendants to pay Plaintiffs unpaid wages under FLSA and NYLL;

3.     Directing Defendants to pay Plaintiffs liquidated damages under the FLSA and NYLL;

4.      Directing Defendants to pay Plaintiffs statutory damages under the NYLL;

5.      Directing Defendants to pay Plaintiffs damages for emotional distress and punitive damages, under the FLSA and NYLL;

6.      Awarding Plaintiffs reasonable attorneys' fees, costs, pre- and post-judgment interest, as provided by law; and

7.      Awarding such other legal and further relief that this Court deems necessary, just, and proper.

Dated:          New York, New York
                December 19, 2019

                                    YOURS,

                                    **BETH E. GOLDMAN, ESQ.**
                                    New York Legal Assistance Group
                                    7 Hanover Square, 18th Floor
                                    New York, NY 10004
                                    Tel: (212) 613-5000

                                    _____
                                    Anamaria Segura, of Counsel

                                    *Attorneys for Plaintiffs*