**NYLAG**
New York Legal Assistance Group

August 3, 2020

<u>VIA ECF</u>

The Honorable Andrew L. Carter, Jr.
United States District Court Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

      Re:    *Perez Lopez et al v. Lucero Produce II Corp. et al*, No. 19-CV-11619-ALC

Dear Judge Carter:

      The New York Legal Assistance Group ("NYLAG") represents Plaintiffs
Estanislao Martin Perez Lopez ("Mr. Lopez"), Omar Perez Sanchez ("Mr. Sanchez"), and
Flor de Maria Ruano ("Ms. Ruano") in the instant action. Pursuant to Magistrate Judge
Sarah Netburn's July 6, 2020 Order (ECF No. 26), we, together with counsel for Lucero
Produce II Corp. and Saul Lucero ("Defendants"), write jointly to request approval of the
Settlement Agreement between Plaintiffs and the Defendants (together, the "parties"),
which resolves Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") and the
New York Labor Law ("NYLL"). Court approval is appropriate, as the Settlement
Agreement and Release ("the Agreement"), attached as Exhibit 1, constitutes a fair and
reasonable compromise of a bona fide dispute.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

**I.**      **Litigation Background**

      **A.**      **Claims and Defenses**

      Plaintiffs bring this action against Defendants for alleged minimum and overtime
wage violations, statutory violations, and in the case of Ms. Ruano, illegal retaliation, all
pursuant to the FLSA, 29 U.S.C. §§ 201, *et seq.* and New York Labor Law ("NYLL") §§
195, 215, 652 and applicable regulations, 12 NYCRR §§ 142 *et seq*. *See* Complaint, ECF
No. 1, ¶ 1. Plaintiffs worked for varying periods of time between 2011 and 2019 in
Defendants' Bronx wholesale produce market and warehouse. *See id.* ¶¶ 28, 42, 44, 70, 73,
106. Ms. Ruano worked as a billing assistant, while Mr. Sanchez and Mr. Lopez worked as
warehouse workers, delivery assistants and truck drivers. *See id.* ¶ 28, 44, 50, 73. Mr.
Sanchez was promoted to the position of truck driver after about five and a half years of
employment, in or around June 2017. *See id.* ¶ 57. Plaintiffs allege that for the vast
majority of their employment, Defendants (i) unlawfully paid them less than the New
York state minimum wage, (ii) failed to pay them any overtime premium of one and a half
times the state minimum wage for hours worked over 40 in a week, and (iii) failed to
provide legally-mandated hiring notices and wage statements. *See* Complaint, ECF No. 1

¶¶ 2-3. Further, Ms. Ruano alleges that when she complained about Defendants' pay practices and retained a lawyer to help her negotiate a fair resolution of her claims, Defendants retaliated against her by first reducing her hours, and then firing her, presenting her with a lengthy separation agreement, and telling her that she was like a "cancer" that had spread to other workers at the business. *Id.* at ¶¶ 2, 101, 106.

Plaintiffs seek their owed wages, as well as liquidated damages and statutory penalties. *See id.* ¶ 4. In addition, Ms. Ruano seeks compensatory and punitive damages. *See id.* Finally, Plaintiffs seek pre-judgment interest, costs and attorneys' fees. *See id.*

Defendants dispute Plaintiffs' allegations. They contend that Plaintiffs Lopez and Sanchez worked far fewer hours than alleged (*see* Answer, ECF No. 21, ¶¶ 33-35, 48, 51, 54, 60, 81, 85) and have asserted a defense to any overtime owed to them pursuant to the Motor Carrier Exemption of the FLSA, 29 U.S.C. §§ 213(b)(1). *See id.* ¶ 17. Defendants also assert that they did not terminate Ms. Ruano's employment; rather, she resigned from her job. *See id.* ¶¶ 86-89.

Although both Plaintiffs and Defendants are confident in their respective legal positions, each party wishes to avoid the considerable uncertainty, risk, and expense presented by continued litigation of this matter.

## II.        Settlement Negotiations and Agreement

### A.        Pre-filing Settlement Negotiations and Mediation

Long before filing this lawsuit, Plaintiffs Ruano and Lopez attempted to settle their claims against the Defendants before resorting to legal action. To that end, on or around October 2, 2018, while Ms. Ruano was still working for the Defendants, Plaintiffs' counsel sent a detailed demand letter to the Defendants on Ms. Ruano's behalf, setting forth the basis for her wage claims, and providing a detailed breakdown of her damages to date. She was fired approximately two weeks of the date of that letter. Over the next several months, via e-mail and telephone, NYLAG continued to attempt resolution of Ms. Ruano's claims, which at that point included illegal retaliation. A few months into the negotiations NYLAG added Mr. Lopez's claims to the negotiation. Defendants did not extend any offer in response, and Plaintiffs abandoned their efforts in around March 2019, after not hearing from Defendants for several months.

Plaintiffs filed the instant action on December 19, 2019, and this Court referred the matter to mandatory mediation on March 30, 2020 as part of the SDNY's pilot program for cases that include claims under the FLSA. *See* ECF No. 17. Pursuant to this Court's mediation order, the parties exchanged pre-mediation disclosures on May 29, 2020. Plaintiffs provided Defendants' counsel with detailed damages computations for each Plaintiff, along with all available documents concerning the Plaintiffs' employment with Defendants. Defendants provided Plaintiffs with 150 pages of disclosures, including copies of certain time records for Ms. Ruano and Mr. Sanchez. The Parties attended a full day remote mediation via "Zoom," on June 30, 2020. After ten uninterrupted hours of negotiation, the Parties reached a settlement in principle as to all three Plaintiffs' claims, and executed a term sheet containing the material terms and conditions of the settlement.

Having spent the past several weeks drafting and negotiating the final settlement terms, the Parties executed the Agreement on August 3, 2020.

### B.     The Agreement

The Defendants propose to pay Mr. Lopez, Mr. Sanchez and Ms. Ruano $35,000, $60,000 and $55,000 respectively, in exchange for a release of their claims. *See* Agreement ¶ 2. In addition, Defendants agree to pay Plaintiffs' counsel $7,000 in attorneys' fees, for a total settlement amount of $157,000 ("the settlement sum"). *See id.*

The total settlement sum will be paid in four installments, six weeks apart, and the amount owed to Plaintiffs will be pro-rated, such that Mr. Lopez, Mr. Sanchez and Ms. Ruano will receive 23%, 40% and 37% of each installment amount. *See* Agreement ¶ 2(b). The first payment will be for $40,000, and will be provided to Defendants' counsel, to be held in escrow, within thirty days of execution of the Agreement (August 30, 2020). *See id.* ¶ 2(b)(i). The second and third payments will also be for $40,000, and the final payment will be for the balance owed to the Plaintiffs, plus fees of $7,000 to be paid to Plaintiffs' counsel. The second, third and final payments are to be made in six-week intervals following the first payment, and thus will be paid by October 11, November 22, 2020, and January 3, 2021, respectively. *See id* ¶ 2(c). The payments are to be held in escrow pending this Court's approval of the Agreement. *See id.* ¶ 2(c)(i). In the event the Court approves the Agreement before all the settlement payments have been provided by Defendants to their counsel, Defendants' counsel will deliver to Plaintiffs' counsel all settlement checks received within ten days of the Court's approval of the Agreement. *See id.* ¶ 2(c)(2)(v). Any remaining payments will be issued by Defendants directly to Plaintiffs' counsel. *See id.*

The tax allocation of Plaintiffs' settlement amounts fairly reflect Plaintiffs' computation of their breakdown of damages. Mr. Lopez and Mr. Sanchez's first and second payment amounts are intended to represent payments for alleged unpaid wages and will thus be subject to applicable tax deductions and withholdings. *See id.* ¶¶ 2(c)(i) -(iv); 4. The third and fourth payment amounts are intended to represent payment for alleged liquidated damages. *See id.* In the case of Ms. Ruano, her first payment is intended to represent payments for alleged unpaid wages and will thus be subject to applicable tax deductions and withholdings; the remaining three payments are intended to represent liquidated and compensatory damages, and shall not be subject to tax deductions or withholdings. *See id.* This tax allocation breaks down as follows: $18,400 as wages and $16,600 as liquidated damages for Mr. Lopez, $32,000 in wages and $28,000 in liquidated damages for Mr. Sanchez, and $14,800 as wages and $40,200 as liquidated and compensatory damages for Ms. Ruano.

To guard against the risk of Defendants' default over the course of the five-month payout period, Defendants have agreed to execute Confessions of Judgment for the full amount of the settlement sum. *See id.* ¶ 3, Exhibit A to Agreement. The executed Confessions of Judgment will be held in escrow by Plaintiffs' counsel pending the payment of the full settlement amount.

## LEGAL ANALYSIS

The parties seek the Court's approval of this negotiated settlement as fair and reasonable, as required by the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).

**I.      The Proposed Settlement Is Fair and Reasonable to All Parties.**

### A.      Settlement Amount

The sufficiency of a FLSA settlement depends on the totality of circumstances, including but not limited to the following factors cited in *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012):

> (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

### 1.      Plaintiffs' Range of Possible Recovery

Pursuant to the Agreement, Plaintiffs' settlement sum is $157,000, and Plaintiffs will receive $150,000 of that amount. Before attorneys' fees, costs or pre-judgment interest, Plaintiffs' counsel estimates Plaintiffs' maximum recovery against the Defendants under the FLSA and NYLL to total approximately $302,212.81. Plaintiffs' counsel estimates that Mr. Lopez's maximum recovery for his unpaid wage claim is $56,615.10, representing $28,307.55 in wages, and an equal amount in liquidated damages. Plaintiffs' counsel estimates that Mr. Sanchez's maximum recovery for his unpaid wage claim is $109,314.04, which represents $54,657.02 in wages and an equal amount in liquidated damages. Plaintiffs' counsel estimates that Ms. Ruano's maximum recovery for her unpaid wage claim is $31,283.68, which represents $15,641.84 in wages and an equal amount in liquidated damages. Plaintiffs' counsel estimates that Ms. Ruano would be able to recover compensatory and punitive damages for her retaliation claims pursuant to the FLSA and NYLL of approximately $75,000, for a total estimate of $116,283.68. In addition, each of the Plaintiffs is due $10,000 in penalties for failure to issue hiring and wage notices pursuant to the NYLL. A detailed breakdown of each individual Plaintiff's estimated damages is attached hereto as Exhibit 2.

As reflected in the attached calculations, Plaintiffs could only collect the full recovery under the FLSA and NYLL if several factual inferences were resolved in their favor. In particular, each Plaintiff would have to prove they in fact worked the number of hours alleged in the Complaint, over Defendants' vigorous contentions otherwise. In addition to contending the number of hours worked per week by the plaintiffs, Defendants would challenge each Plaintiff's entitlement to liquidated damages, especially with respect to Lopez and Sanchez who were paid in a manner consistent with well-established

assumptions regarding the motor-carrier exemption to overtime for workers who drove trucks across state lines and the helpers that assisted them.

The Defendants sharply dispute Mr. Lopez and Mr. Sanchez's alleged hours worked in particular. Mr. Lopez alleges to have worked approximately 101.5 hours per week, and Mr. Sanchez alleges to have worked between 61.5 to 67.5 hours per week. *See* Complaint ¶¶ 33, 48-57. Defendants contend that neither of them worked over 60 hours per week, and that neither is owed any minimum wage or overtime pay. *See* Answer ¶¶ 33-35, 48, 51, 54, 60. The Defendants contend that $15,000 is the most Mr. Lopez and Mr. Sanchez could recover, before liquidated damages. In addition, the Defendants contend that Ms. Ruano's owed wages are no higher than $10,000.

The proposed settlement provides substantial recovery for each Plaintiff, especially considering the risks present in this litigation. Exclusive of attorneys' fees or pre-judgment interest, the net settlement amounts to be paid to Mr. Lopez, Mr. Sanchez, and Ms. Ruano represents approximately 53%, 50%, and 47% of Plaintiffs' counsel's estimate of their total maximum recovery, respectively. These amounts are within the range of recovery that represent a reasonable compromise of those claims. *See, e.g.*, *Fraticelli v. MSG Holdings, L.P.*, No. 13 Civ. 6518, 2018 WL 5004867 at *2 (S.D.N.Y. Oct. 16, 2018) (settlement approved where multiple plaintiffs received 48% and 37% of alleged individual damages);); *Chowdhury v. Brioni America*, Inc., No. 16 Civ. 344, 2017 WL 5953171 at *2 (S.D.N.Y. Nov. 29, 2017) (Pitman, M.J.) (net settlement of 40% of FLSA plaintiffs' maximum recovery is reasonable); *Redwood v. Cassway Contracting Corp.*, No. 16 Civ. 3502, 2017 WL 4764486 at *2 (S.D.N.Y. Oct. 18, 2017) (Pitman, M.J.) (net settlement of 29.1% of FLSA plaintiffs' maximum recovery is reasonable); *Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531, 2016 WL 3791149 at *2 (S.D.N.Y. Mar. 8, 2016) (Engelmayer, D.J.) (net settlement of 25% of FLSA plaintiff's maximum recovery is reasonable).[1]  Moreover, the amounts being paid to each Plaintiff represent a recovery of well over 100% of Plaintiffs' calculation of their actual minimum wage and overtime underpayments, before liquidated damages and penalties. *See Deran v. Antalia Turkish Cuisine LLC*, No. 19 Civ 6833, 2020 WL 3414890 at *2 (S.D.N.Y. June 22, 2020) (Moses, M.J.) (approving as fair and reasonable FLSA settlement where plaintiff's recovery was 10% higher than his claim for actual unpaid wages and overtime).

Accordingly, in light of the parties' good faith factual disputes and the attendant risk and costs of proceeding with this litigation, the parties believe that a settlement of $150,000, not including attorney's fees, is fair and reasonable.

---

[1]      Courts in this district do not generally consider pre-judgment interest when assessing the fairness of this settlement. *See, e.g.*, *Tapia v. Mt. Kisco Bagel Co. Inc.*, No. 18 Civ. 02864, 2018 WL 4931542, at *2 (S.D.N.Y. Oct. 10, 2018) (assessing settlement exclusive of pre-judgment interest); *Ortiz v. My Belly's Playlist LLC*, No. 16 Civ. 2924, 2018 WL 1918611, at *3 (S.D.N.Y. Apr. 19, 2018) (same); *Romero v. Fluff N Fold Laundry Servs. LLC,* No. l5 Civ. 9535, 2018 WL 2768642, at *2 (S.D.N.Y. June 8, 2018) (same); *Gamero v. Koodo Sushi Corp.*, 328 F. Supp. 3d 165, 172, 176 (S.D.N.Y. 2018) (same).

### 2. Burdens and Expenses of Establishing Claims and Defenses, and Seriousness of Litigation Risk

All parties face considerable risks in proceeding with this litigation. As set forth above, there are significant factual disputes that could affect the amount of the Plaintiffs' recovery. Even though the Plaintiffs are confident in the strength of their claims and are prepared to prove them, the Defendants have asserted that they worked no more than 60 hours per week, and at the rates they were paid, are owed little to no overtime pay. The Defendants have represented that they will be able to present testimony from former employees purporting to establish that the Defendants worked fewer hours than alleged in the Complaint. The Court could also find that the Defendants acted in good faith and thus decline to award any amount in liquidated damages.

Conversely, the Defendants are mindful that defeating Plaintiffs' claims may require protracted litigation and considerable cost, including extensive attorney time and payment of court-certified interpreters at deposition and trial. Accordingly, the parties have entered into this Agreement with the shared goal of avoiding the considerable burdens, expenses and inherent risk of continuing with this litigation.

### 3. Arm's-Length Bargaining and Possibility of Fraud or Collusion

"Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013). A settlement negotiated by experienced counsel and reached with the assistance of a third-party neutral is presumed fair. *Vasquez v. TGD Grp., Inc.*, No. 14 Civ. 7862, 2016 WL 3181150, at *3 (S.D.N.Y. June 3, 2016) (citing *Hernandez v. Anjost Corp.*, No. 11 Civ. 1531, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013)) (finding due process where parties engaged in arm's length negotiations making "the possibility of fraud and collusion [] minimal").

The Agreement is the product of arm's-length negotiations between the parties' counsel, including a full-day, ten-hour mediation overseen by a skilled court-appointed mediator. The parties vigorously contested factual and legal disputes during negotiations, and between them provided 160 pages of document disclosures that would have been released during the subsequent discovery process had the matter not reached a settlement in principle. The parties were prepared to prosecute and defend their respective positions and expected to incur substantial expense through depositions of opposing witnesses. The Agreement represents a clear-eyed assessment that each parties' interests are best served by resolution at this point in the case.

Both parties to this Agreement are represented by counsel experienced in litigating wage and hour matters, and there is no evidence of overreaching by the Defendants or any evidence of fraud or collusion. Moreover, this Agreement is fully transparent to the Court, containing no confidentiality provision. The Plaintiffs actively participated at every stage of the settlement process, attended all ten hours of the June 30, 2020 mediation session, and conferred extensively with counsel concerning the terms of the Agreement.

Plaintiffs' attorneys have decades of experience litigating FLSA and other wage and hour cases. NYLAG has brought numerous lawsuits on behalf of working New Yorkers under the FLSA and NYLL, including cases that concluded with court-approved settlements pursuant to *Cheeks*. *See, e.g., Martinez v. Chestnut Holdings of New York, Inc. et. al.*, No. 18 Civ. 7009 (S.D.N.Y.); *Mejia v. Orin Management LLC*, No. 18 Civ. 11694 (S.D.N.Y.); *Rivera v. Colony Heights LLC et al.*, No. 15 Civ. 1560 (E.D.N.Y.)*; Beging v. Cabot et al.*, No. 14 Civ. 2462 (S.D.N.Y.); *Alvarado et al. v. El Anzuelo Fino Corp. et al.*, 12 Civ. 05020 (E.D.N.Y.).

Prior to joining NYLAG as the Supervising Attorney of its Employment Law Project in March 2019, Anamaria Segura litigated numerous lawsuits under the FLSA and NYLL as a senior staff attorney at Mobilization for Justice (formerly MFY Legal Services), including cases certified as class actions that concluded with court-approved settlements, and individual wage and hour claims ending in settlements subject to *Cheeks* approval. *See, e.g., Pinzon v. 552 La Mina Supermarket, Inc.*, No. 16 Civ. 460 (S.D.N.Y.); *Castillo v. BNV Home Care Agency*, No. 650726/2013 (Sup. Ct. N.Y. Cty.); *Castillo v. First Care of New York, Inc.*, No. 51140/2013 (Sup. Ct. Westchester Cty.); *Luna v. Lorenzo & Maria's 1418 Kitchen Co.*, No. 13 Civ. 1564 (S.D.N.Y); *see also Sykes v. Harris*, No. 09 Civ. 8486, 2016 WL 3030156, at *4 (S.D.N.Y. May 24, 2016) (approving consumer class action settlement in which MFY Legal Services and co-counsel represented plaintiffs, noting experience of counsel).

### B.   The Parties' Negotiated Non-Monetary Provisions are Reasonable.

In addition to the monetary recovery, the Agreement contains the following non-monetary terms, all agreed-upon following arms-length negotiations in good faith between the parties.

### 1.   Release of Wage and Hour Claims

Plaintiffs' narrowly tailored release of their wage and hour claims is fair and reasonable. *See* Ex. 1 at ¶ 5. Limited releases do not raise fairness concerns under *Cheeks*, and are routinely approved by courts in this District. *See Santos v. Yellowstone Properties, Inc.*, No. 15 Civ. 3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (Limited release approved even where accompanied by separate, general release as to non-FLSA claims); *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727, 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015) (In contrast to narrow releases, "[c]ourts in this District routinely reject release provisions that waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.").

### 2.   Mutual Non-Disparagement Provision

The Agreement contains no confidentiality provision. It also contains a narrowly-drafted mutual non-disparagement provision, whereby Plaintiffs reserve their right to make truthful statements regarding their litigation of the claims in this action. *See* Agreement at

¶ 5. Courts in this district have looked favorably on such provisions, *see e.g.*, *Deran*, 2020 WL 3414890 at *2 (approving FLSA agreement containing mutual non-disparagement clause allowing truthful statements), and have approved settlements with broader restrictions on Plaintiffs' ability to publicly share information concerning settlement terms, including non-publication provisions. *See*, *e.g.*, *Chowdhury v. Brioni AM, Inc.*, No. 16 Civ. 344, 2017 WL 5125535, at *4 (finding that a non-publication clause does not interfere with the FLSA's remedial purposes because the settlement agreement will be available on the public docket); *Lola v. Skadden, Arps, Slate, Meagher & Flom LLP*, No. 13 Civ. 5008, 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (same); *Flores v. Studio Castellano Architect, P.C.*, No. 15 Civ. 9158, 2017 WL 4417697, at *3 (S.D.N.Y. Oct. 2, 2017) (finding that non-disclosure provision limited to non-publication of the terms of the settlement in news or social media was "well within the bounds of reason and fairness").

## C.      Plaintiffs' Attorneys' Fees are Fair and Reasonable

Pursuant to ¶ 2(a) of the Agreement, Plaintiffs' counsel will receive $7,000 in total fees. In assessing the reasonableness of settlement agreements in FLSA cases, Courts in this District examine settlement payments of attorneys' fees by scrutinizing the percentage of fees as compared with the total settlement recovery, and by applying the lodestar method as a "cross-check." *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (noting the lodestar method is a useful "cross-check" on the reasonableness of a requested percentage of fees); *Vasquez*, 2016 WL 3181150, at *4 (noting that courts may use the lodestar method when determining attorneys' fees in a FLSA settlement); *Wolinsky*, 900 F. Supp. 2d at 336 (there is a "strong presumption" that the lodestar amount "represents a reasonable fee"); *Meza v. 317 Amsterdam Corp.*, No. 14 Civ. 9007, 2015 WL 9161791, at *2 (S.D.N.Y. Dec. 14, 2015) ("[C]ourts regularly approve attorneys' fees of one-third of the settlement amount in FLSA cases.").[2]

In this case, NYLAG is requesting a total of $7,000 in attorneys' fees, which represents only 4.5% of the settlement sum, and about 27% of its total hourly fees of $25,627.50, as reflected in its time detail records up through June 30, 2020, annexed as Exhibit 3. Notably, NYLAG has exercised billing discretion by not including in the attached fee detail: (1) any hours incurred prior to October 4, 2019; (2) any hours incurred after June 30, 2020, including time expended on finalizing the Agreement or this joint request for approval; or (4) any legal intern hours. The following reflects the total fees reflected in the attached fee detail:

---

[2] The Second Circuit has clarified that there is no proportionality limit on recoverable attorneys' fees in an FLSA case, and thus that courts cannot place an automatic cap on such fees at 33%. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 602-05 (2d Cir. 2020). Here, Plaintiffs' counsel are requesting a fee award well below that percentage and approval of this award presents no comparable issues relating to approval of the fee award. *Deran* at 2020 WL 3414890 at *2.

| Name | Year of Admission | Rate | Hours | Total Hourly Fees |
|------|-------------------|------|-------|-------------------|
| Anamaria Segura (Supervising Attorney) | 2008 | $425[3] | 51.9 | $22,057.50 |
| Layla Malamut (Paralegal) | N/A | $150 | 23.8 | $3,570.00 |
| | | | **TOTAL** | **$25,627.50** |

The above hourly rates are consistent with rates approved in this District: "Consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time." *Lanzetta v. Florio's Enterprises, Inc.*, No. 08 Civ. 6181, 2011 WL 3209521, at *7 (S.D.N.Y. July 27, 2011) (citation and internal quotation marks omitted) (individual FLSA case). The hours expended are reasonable for an individual FLSA case that included extensive settlement discussions and considerable pre-mediation disclosures.

*         *         *

For the foregoing reasons, the parties request that the Court approve the Agreement in this matter.

Respectfully submitted,

Anamaria Segura

Enclosures

cc:     All Counsel (via ECF)

---

[3] *See, e.g.*, *Martinez v. Chestnut Holdings of New York, Inc. et. al.*, No. 18 Civ. 7009, ECF Nos. 52, 76 (S.D.N.Y. Feb. 11, 2019 and Jan. 9, 2020) (approving Ms. Segura's attorney fee rate of $425 in two separate settlements of Plaintiff's FLSA and NYLL claims); *Pinzon v. 552 La Mina Supermarket, Inc.*, No. 16 Civ. 460, ECF No. 28 (S.D.N.Y. Oct. 18, 2016) (approving same rate in FLSA & NYLL lawsuit); *Sykes v. Harris*, No. 09 Civ. 8486, 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) (approving $350/hour rate for Ms. Segura in class action settlement, where she performed work on the matter from 2009 to 2012, as an attorney with one to four years of experience); *see also* Decl. of Matthew D. Brinckerhoff Ex. 5, ¶ 20, *Sykes v. Harris*, No. 09 Civ. 8486, ECF No. 244 (S.D.N.Y. April 18, 2016).

# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

THIS SETTLEMENT AGREEMENT (the "Agreement") is entered into as of August  3, 2020 by and between, on the one hand, Estanislao Martin Perez Lopez ("Lopez"), Omar Perez Sanchez ("Sanchez"), and Flor De Maria Ruano ("Ruano") (collectively, "the Plaintiffs"); and on the other hand, Lucero Produce II Corp., and Saul Lucero (collectively, "Defendants").  The Plaintiffs and Defendants shall be referred to herein individually as a "Party" and collectively where applicable as the "Parties."

WHEREAS, on December 19, 2019, the Plaintiffs commenced an action (*Lopez et al. v. Lucero Produce II Corp.*, *et al.*, 19 Civ. 11619 (ALC) (SN) (S.D.N.Y.)) alleging certain violations of the Fair Labor Standards Act ("FLSA"), and the New York State Labor Law and applicable regulations ("NYLL") (the "Action") against Defendants; and

WHEREAS, the Parties mutually desire to avoid further litigation and to enter into this Agreement to settle all disputes between them amicably in accordance with the terms and conditions of this Agreement;

NOW, THEREFORE, in consideration for the covenants and obligations provided for herein, the sufficiency of which the Parties hereby acknowledge, the Parties hereby agree as follows:

1.  <u>Effective Date</u>.  Should the Court in this action accept this Agreement as fair and reasonable upon application by the Parties then its Effective Date shall be the date that the Court grants the Parties' application to accept this Agreement and dockets that decision on the Court's ECF system.

2.  <u>Payment Amount; Schedule.</u>

(a) Defendants shall pay Lopez, Sanchez and Ruano $35,000, $60,000 and $55,000 respectively.  In addition, Defendants will pay Counsel to Plaintiffs $7,000 in attorney's fees.

(b) The aforementioned payments will be paid in four (4) installments every six (6) weeks, and will be pro-rated as to each Plaintiff, such that: Lopez shall receive .23, or 23%, of each payment, Sanchez shall receive .4, or 40% of each payment, and Ruano shall receive .37, or 37% of each payment.

(c) The payments shall be made in accordance with the following schedule and will be allocated as follows:

    i.  <u>First Payment</u>: Within thirty (30) days of execution of this Agreement but no earlier than six weeks from June 30, 2020, Defendants shall issue to their counsel a first tranche settlement payment of $40,000 that will be pro-rated as set forth in section 2(b), above, with respect to each Plaintiff. Accordingly, Lopez, Sanchez and Ruano shall receive $9,200, $16,000 and $14,800 of the first tranche payment, respectively. This payment, as with subsequent payments, are to be held in escrow pending court approval of this Agreement.

These payments shall represent payment for alleged unpaid wages and are thus subject to applicable tax deductions and withholdings.

ii.    Second Payment. Six weeks following the payment set forth in Section 2(c)(i), Defendants shall issue to their counsel a second set of settlement payments in the same amounts as set forth in Section 2(c)(i), above. The payments issued to Lopez and Sanchez shall represent payment for alleged unpaid wages and are thus subject to applicable tax deductions and withholding. The payment issued to Ruano shall represent payment for alleged liquidated damages, and shall not be subject to tax deductions or withholding.

iii.    Third Payment. Six weeks following the payment set forth in Section 2(c)(ii), Defendants shall issue to their counsel a third set of settlement payments in the same amounts as set forth in Sections 2(c)(i) and (ii), above. These payments shall represent payment for alleged liquidated damages, and in the case of Ruano, compensatory damages, and shall not be subject to tax deductions or withholdings.

iv.    Fourth (final) Payment. Six weeks following the payment set forth in Section 2(c)(iii), Defendants shall issue to their counsel a final settlement payment in the following amounts: to Lopez, $7,400, to Sanchez, $12,000, and to Ruano, $10,600. These payments shall represent payment for alleged liquidated damages, and in the case of Ruano, compensatory damages, and shall not be subject to tax deductions or withholdings.

v.    At the same time that Defendants make their final pro-rated payments to Plaintiffs, they will issue the above-referenced payment of $7,000 to Plaintiffs' counsel, representing attorney's fees.

vi.    Should the Court approve this Agreement before all of the settlement payments have been made by Defendants to their counsel, then Defendants' counsel will deliver to Plaintiffs' counsel all settlement checks received within ten (10) days of the aforementioned court approval.  Thereafter, Defendants will issue any remaining settlement payments directly to Plaintiffs' counsel.

3.    <u>Breach & Opportunity to Cure.</u> Defendants will execute a Confession Judgment, as set forth in the attached Exhibit A, accompanied herewith, to be held in escrow by Plaintiffs' counsel. The Confession of Judgment renders each Defendant liable in the event of a breach of Section 2 of this Agreement, in the amount of $157,000, minus any amounts that Defendants have paid to Defendants' counsel and/or to the Plaintiffs up to the date of the breach, as to each Defendant jointly and severally.  In the event of a breach of this provision, Plaintiffs will provide a written notice of said breach, via electronic mail, to be provided to Defendants' counsel using the following contact information: Cardi & Edgar LLP, 99 Madison Avenue, 8th Floor, New York, NY 10016, Attn: Chad L. Edgar, Esq.; cedgar@cardiedgarlaw.com; 212.271.0665 (fax). Upon receipt of said written notice, Defendants will have 15 days to cure the breach.

4.    <u>Tax Allocation and Liability.</u> The intent and desire of Plaintiffs is that the portions of the settlement amount paid to Plaintiffs pursuant to Section 2(c)(i) of this Agreement shall be allocated as W-2 wage payments to compensate Plaintiffs for alleged unpaid wages and shall be subject to all applicable federal, state, and local tax withholdings. The same shall be true as to amounts paid to Plaintiff Lopez and Sanchez with respect to the settlement amount paid to them

2

pursuant to Section 2(c)(ii). Defendants shall issue an IRS Form W-2 to Plaintiffs with respect to these payments of the Settlement Amount. The intent and desire of Plaintiffs is that the portion of the settlement amount paid to Plaintiff Ruano pursuant to Section 2(c)(ii), and the amounts paid to all Plaintiffs pursuant to Sections 2(c)(iii) and 2(c)(iv) of this Agreement are not attributable to nor shall they be considered as, in the nature of, or substitute for, wages. Rather, it is intended by Plaintiffs that those amounts paid to Plaintiffs be in the nature of liquidated damages, and in the case of Ruano, either liquidated or compensatory damages. Defendants shall issue an IRS Form 1099-MISC under Box 3 to Plaintiffs with respect to these non-wage payments.

Each Plaintiff acknowledges and agrees that they bear all tax responsibility for taxes due from them on their payments set forth in paragraph 2 of this Agreement, beyond those amounts withheld as employment-related taxes. Each Plaintiff further agrees to bear any tax liability should there be any claim for taxes, interest and/or penalties that may be assessed in connection with each of their payment of taxes regarding the settlement funds, their failure to do so, and/or the apportionments of the settlement sum set forth in this Section and in Section 2 of this Agreement. With respect to payments pursuant to this Agreement characterized as wages, Defendants shall make appropriate payroll deductions and are responsible for the employer portion of payroll taxes.

5.  <u>FLSA and NYLL Release</u>.

The Plaintiffs together with their heirs, executors, administrators, trustees, attorneys, and assigns hereby release and discharge, and covenant not to sue, to the fullest extent permitted by law, Lucero Produce II Corp., together with its past, present, or future shareholders, members, principals, officers, directors, trustees, employees, agents, affiliates, attorneys, representatives, predecessors, successors, and assigns, and Saul Lucero, together with his heirs, executors, administrators, trustees, attorneys, and assigns (collectively, the "Plaintiff Releasees") from and regarding all wage and hour claims pursuant to either the Fair Labor Standards Act or the New York Labor Law, including but not limited to claims for failure to pay overtime compensation, failure to pay minimum wage, retaliation for complaining about alleged violations under either the Fair Labor Standards Act or the New York Labor Law, and any such similar claim under the Fair Labor Standards Act and/or the New York Labor Law, that were or could have been raised in this action. To the extent that any such claims that were or could have been raised in this action against any Defendants under the Fair Labor Standards Act and/or the New York Labor Law might be encompassed within or by a pending or future class action, representative action, or collective action, the Plaintiffs will affirmatively "opt out" of or otherwise not elect to participate in that action and will not directly or indirectly seek nor accept any recovery therein.

Lucero Produce II Corp., together with its past, present, or future shareholders, members, principals, officers, directors, trustees, employees, agents, affiliates, attorneys, representatives, predecessors, successors, and assigns, and Saul Lucero, together with his heirs, executors, administrators, trustees, attorneys, and assigns (collectively, the "Defendant Releasors") hereby release and discharge, and covenant not to sue, to the fullest extent permitted by law, Lopez, Sanchez and Ruano, together with their heirs, executors, administrators, trustees,

attorneys and assigns (collectively, the "Defendant Releasees") from and regarding all actions, causes of action, suits, claims, counterclaims, complaints, obligations, liabilities, judgments, covenants, contracts, agreements, debts, dues, accounts, sums of money, fees, attorney's fees, damages, and demands of every name and nature and kind whatever, whether in law or equity, whether known or unknown, that any of the Defendant Releasors ever had or now have against any of the Defendant Releasees from the beginning of the world until the date of the execution of this Agreement including without limitation all claims that were or could have been raised in this action.

6.    <u>Mutual Non-Disparagement.</u>  The Parties agree that each will not at any time say or do anything that negatively affects any other Party's reputation or business interests. Plaintiffs reserve the right to make truthful statements regarding their litigation of their claims in this action, including providing truthful information to Plaintiffs' counsel to be used on the New York Legal Assistance Group's website, provided any description of this action is general, omits party names and does not provide hypertext links to court documents associated with this action.

7.    <u>Non-Admissions.</u>  It is understood and agreed that neither this Agreement itself, nor the furnishing of the consideration for this Agreement, shall be deemed or construed at any time for any purpose as an admission of the Defendants' liability or responsibility for any wrongdoing of any kind.

8.    <u>Stipulation of Discontinuance</u>.  Promptly after the Effective Date, counsel for the Parties shall file a stipulation of discontinuance in this action dismissing with prejudice all claims by the Plaintiffs against Defendants.

9.    <u>Choice of Law, Jurisdiction, and Venue</u>.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to any conflict of laws rules to the contrary.  The courts in New York County (State and Federal) shall have exclusive jurisdiction over any controversies relating to or arising out of this Agreement, and the Parties waive any objection based on venue or personal jurisdiction being asserted over them by such a court.  In any action or proceeding to enforce the terms of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party (in addition to any damages or other relief the Court may award) reasonable attorneys' fees and costs incurred in such action or proceeding.

10.    <u>Entire Agreement</u>.  This Agreement constitutes the entire agreement among the Parties hereto with respect to the matters covered hereby and supersedes and extinguishes any prior or contemporaneous agreement, understanding, or undertaking, whether written or oral, by or between the Parties.

11.    <u>Voluntary Signing of Agreement</u>.  The Parties acknowledge that they each has voluntarily entered into this Agreement, after consulting with counsel, and that no promises or representations were made to them by any person to induce them to enter into this Agreement other than the express terms set forth herein.  The Parties further acknowledge that they have read this Agreement and understood all of its terms and when necessary had its terms explained

4

to them with the assistance of a Spanish interpreter and/or translator.  This Agreement shall be deemed to have been drafted by the Parties jointly.

12.   <u>Modification and Waiver</u>.  No term or provision of this Agreement may be varied, changed, modified, waived, discharged, or terminated orally, but only by an instrument in writing signed by the Party against whom the enforcement of the variation, change, modification, waiver, discharge, or termination is sought.  The waiver by any Party hereto of any breach of any provision of this Agreement shall not constitute or operate as a waiver of any other breach of such provision or of any provision hereto, nor shall any failure to enforce any provision hereto operate as a waiver at such time or at any time in the future of such provision or any provision hereof.

13.   <u>Severability</u>.  In the event that any provision of this Agreement shall be found to be invalid and unenforceable in any action or proceeding, the remaining provisions shall remain in full force and effect.

14.   <u>Counterparts</u>.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.  Signatures by facsimile, .pdf, or other electronic imaging shall be deemed to constitute original signatures.  Copies of this Agreement shall have the same force and effect as an original, and each of the Parties hereby expressly waives any right to assert that such copies fail to comply with the "Best Evidence" rule of the Federal Rules of Evidence or any equivalent rule of law or evidence of any other jurisdiction.

15.   <u>Authority</u>.  Each person executing this Agreement on behalf of each Party represents and warrants that he or she is duly authorized to do so and that his or her signature so binds the Party.

IN WITNESS WHEREOF, the Parties hereto, by their duly authorized representatives, have executed this Agreement as of the day and year first above written.

By: Estanislao Martin Perez Lopez
Date: August 3, 2020

By:  Omar Perez Sanchez
Date: August 3, 2020

By: Flor De Maria Ruano
Date: August 3, 2020

By: Saul Lucero
Date:

to them with the assistance of a Spanish interpreter and/or translator. This Agreement shall be deemed to have been drafted by the Parties jointly.

12.   <u>Modification and Waiver</u>. No term or provision of this Agreement may be varied, changed, modified, waived, discharged, or terminated orally, but only by an instrument in writing signed by the Party against whom the enforcement of the variation, change, modification, waiver, discharge, or termination is sought. The waiver by any Party hereto of any breach of any provision of this Agreement shall not constitute or operate as a waiver of any other breach of such provision or of any provision hereto, nor shall any failure to enforce any provision hereto operate as a waiver at such time or at any time in the future of such provision or any provision hereof.

13.   <u>Severability</u>. In the event that any provision of this Agreement shall be found to be invalid and unenforceable in any action or proceeding, the remaining provisions shall remain in full force and effect.

14.   <u>Counterparts</u>. This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument. Signatures by facsimile, .pdf, or other electronic imaging shall be deemed to constitute original signatures. Copies of this Agreement shall have the same force and effect as an original, and each of the Parties hereby expressly waives any right to assert that such copies fail to comply with the "Best Evidence" rule of the Federal Rules of Evidence or any equivalent rule of law or evidence of any other jurisdiction.

15.   <u>Authority</u>. Each person executing this Agreement on behalf of each Party represents and warrants that he or she is duly authorized to do so and that his or her signature so binds the Party.

IN WITNESS WHEREOF, the Parties hereto, by their duly authorized representatives, have executed this Agreement as of the day and year first above written.


_____
By: Estanislao Martin Perez Lopez
Date:


_____
By: Omar Perez Sanchez
Date:


_____
By: Flor De Maria Ruano
Date:


x Saúl Lucero
By: Saul Lucero
Date: August 3, 2020

For Lucero Produce II Corp.:


_+ Saul Lucero_____

By:        Saul Lucero
Title:     Chief Executive Officer
Date:  August 3, 2020

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - -x
ESTANISLAO MARTIN PEREZ LOPEZ et al.,          :
                                               :
                        *Plaintiffs,*          :       Index No.:
                                               :
              -against-                        :       **AFFIDAVIT OF CONFESSION OF**
                                               :       **JUDGMENT**
LUCERO PRODUCE II CORP. and SAUL               :
LUCERO,                                        :
                                               :
                                               :
                        *Defendants*           :
                                               :
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - -x


STATE OF NEW YORK       )
                        : ss.:
COUNTY OF QUEENS        )

    1.    I, SAUL LUCERO, reside in Bronx County and signed this document while located in Bronx County. This document was notarized pursuant to Executive Order 202.7.

    2.    Pursuant to the terms of the Settlement Agreement and Release by and between Estanislao Martin Perez Lopez ( "Lopez"), Omar Perez Sanchez ("Sanchez"), Flor de Maria Ruano ("Ruano") (collectively, "the Plaintiffs") on the one hand, and Lucero Produce II Corp. ("Lucero Corp."), and Saul Lucero ("Saul") (collectively, "the Defendants") on the other hand, to which this Affidavit is annexed, I hereby confess judgment and authorize entry thereof against me individually and in favor of Plaintiffs for the sum of One Hundred and Fifty-Seven Thousand Dollars and Zero Cents ($157,000.00), less any payments made under the Settlement Agreement and Release.

    3.    This affidavit of confession of judgment is for a debt justly due to Plaintiffs under the terms of the Settlement Agreement and Release, to which this Affidavit is annexed, which provides that Defendants are to submit a total sum of $157,000 in settlement of the action, and that in the event Defendants fail to make a payment and fail to cure default, Defendants shall be liable in the amount of $157,000 less any amounts already paid under the Settlement Agreement and Release.

    4.    This affidavit is made upon good and valuable consideration, the sufficiency of which I acknowledge on behalf of Defendants, including, without limitation, the terms and provisions of the Settlement Agreement.

5.      I hereby represent my understanding that upon Defendants' breach of the Settlement Agreement and Release and failure to cure, this Confession of Judgment shall be docketed and entered in the Supreme Court of the State of New York as a judgment for $157,000.00 (less any amounts already paid to Plaintiffs pursuant to the schedule described in the Settlement Agreement and Release), against me, Saul Lucero, jointly and severally with a separate affidavit of confession of judgment executed by Lucero Produce II Corp.

_____

SAUL LUCERO

Sworn to before me this
3 day of August 2020

_____

Notary Public

CAROLINE PARZYCH
Notary Public, State of New York
No. 01PA6331268
Qualified in Queens County
Commission Expires October 05, 2023

SUPREME COURT OF THE STATE OF NEW YORK

-------------------------------------x

ESTANISLAÒ MARTIN PEREZ LOPEZ et al.,     :
   :
                  *Plaintiffs,*     :     Index No.:
   :
       -against-     :     **AFFIDAVIT OF CONFESSION OF**
   :     **JUDGMENT**
LUCERO PRODUCE II CORP. and SAUL     :
LUCERO,     :
   :
   :
   :
                  *Defendants*     :
   :

-------------------------------------x

STATE OF NEW YORK     )
                   : ss.:
COUNTY OF QUEENS    )

    1.    I, Saul Lucero, reside in _Bronx_ County and signed this document while located in _Bronx_ County. This document was notarized pursuant to Executive Order 202.7.

    2.    I am the Chief Executive Officer of Lucero Produce II Corp. I am duly authorized to make this affidavit of confession of judgment on behalf of Lucero Produce II Corp.

    3.    Lucero Produce II Corp. maintains its principal place of business in Bronx County at 1250 Randall Avenue, Bronx NY 10474.

    4.    Pursuant to the terms of the Settlement Agreement and Release by and between Estanislao Martin Perez Lopez ( "Lopez"), Omar Perez Sanchez ("Sanchez"), Flor de Maria Ruano ("Ruano") (collectively, "the Plaintiffs") on the one hand, and Lucero Produce II Corp. ("Lucero Corp."), and Saul Lucero ("Saul") (collectively, "the Defendants") on the other hand, to which this Affidavit is annexed, I hereby confess judgment and authorize entry thereof against Lucero Corp. and in favor of Plaintiffs for the sum of One Hundred and Fifty-Seven Thousand Dollars and Zero Cents ($157,000.00), less any payments made under the Settlement Agreement and Release.

    5.    This affidavit of confession of judgment is for a debt justly due to Plaintiffs under

the terms of the Settlement Agreement and Release, to which this Affidavit is annexed, which provides that Defendants are to submit a total sum of $157,000 in settlement of the action, and that in the event Defendants fail to make a payment and fail to cure default, Defendants shall be liable in the amount of $157,000 less any amounts already paid under the Settlement Agreement and Release.

6.    This affidavit is made upon good and valuable consideration, the sufficiency of which I acknowledge on behalf of Lucero Corp., including, without limitation, the terms and provisions of the Settlement Agreement and Release.

7.    I hereby represent my understanding that upon Defendants' breach of the Settlement Agreement and failure to cure, this Confession of Judgment shall be docketed and entered in the Supreme Court of the State of New York as a judgment for $157,000.00 (less any amounts already paid to Plaintiff pursuant to the schedule described in the Settlement Agreement and Release), against Lucero Produce.

Lucero Produce II Corp.

By: Saúl Lucero
Saul Lucero
Title: Chief Executive Officer

STATE OF NEW YORK    )
                                          ss.:
COUNTY OF QUEENS    )

On August 3 , 2020, before me personally came Saul Lucero , to me known, who, by me duly sworn, did depose and say that deponent resides at Bronx County , that deponent is the Chief Executive Officer of Lucero Produce II Corp., the party described herein, and that deponent executed the foregoing Affidavit of Confession of Judgment on behalf of Lucero Produce II Corp. and was authorized to do so.

Caroline Parzych
Notary Public

CAROLINE PARZYCH
Notary Public, State of New York
No. 01PA6331268
Qualified in Queens County 2023
Commission Expires October 05, 2019

# Exhibit 2

| | | | | | | | | | | | | | Notes: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **_Lopez et al.  v.  Lucero Produce II Corp. et al._  No. 19-CV-11619 (ALC)** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **Estanislao Martin Perez Lopez Unpaid Wage Computation** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| **NYLL** | | | | | | | | | | | | | |
| **Date Range** | **Appx. # Weeks** | **Appx. Hours Worked/Wk** | **# Regular Hrs** | **# OT Hours** | **Minimum Wage** | **OT Rate** | **Amount Paid Per Week** | **Amount Earned Per Week** | **Amount Owed Per Week** | **Amount Owed for Date Range** | **# Days Worked Over 10 hours Per Week** | **Spread of Hours Owed Per Week** | **Spread of Hours for Date Range** | |
| 3/4/2017 - 12/23/2017 | 42.14 | 101.5 | 40 | 61.5 | $ 11.00 | $ 16.50 | $ 860.00 | $ 1,454.75 | $ 594.75 | **$ 25,062.77** | 7 | $ 77.00 | $ 3,244.78 | # weeks reduced by one week; was out sick one week |
| | | | | | | | | | **NYLL Wages Owed** | **$ 25,062.77** | | **SOH Owed** | **$ 3,244.78** | |
| **FLSA** | | | | | | | | | | | | | | |
| 3/4/2017 - 12/23/2017 | 42.14 | 101.5 | 40 | 61.5 | $ 7.25 | $ 16.50 | $ 860.00 | $ 1,304.75 | $ 444.75 | **$ 18,741.77** | | | | |
| | | | | | | | | | **FLSA Wages Owed** | **$ 18,741.77** | | | | FLSA total not included in total wages owed since wages owed are for overlapping time periods |
| **Total Wages Owed:** | **$   28,307.55** | | | | | | | | | | | | | |
| **Liquidated Damages:** | **$   28,307.55** | | | | | | | | | | | | | |
| **Wage Theft Prevention Act Notice Penalties** | **$   10,000.00** | | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| **Total Damages:** | **$   66,615.09** | | | | | | | | | | | | | |

**Lopez et al.  v.  Lucero Produce II Corp. et al. No. 19-CV-11619 (ALC)**

**Omar Perez Sanchez Unpaid Wage Computation**

**NYLL**

| Date Range | Appx. # Weeks | Appx. Hours Worked/Wk | # Regular Hrs | # OT Hours | Minimum Wage | OT Rate | Amount Paid Per Week | Amount Earned Per Week | Amount Owed Per Week | Amount Owed for Date Range | # Days Worked Over 10 hours Per Week | Spread or Hours Owed Per Week | Spread of Hours for Date Range | Notes: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2013** | | | | | | | | | | | | | | |
| 12/20/2013 to 12/30/2013 | 1.43 | 67.5 | 40 | 27.5 | $ 7.15 | $ 10.73 | $ 450.00 | $ 580.94 | $ 130.94 | **$ 187.24** | 5 | $ 35.75 | $ 51.12 | |
| **2014** | | | | | | | | | | | | | | |
| 12/31/2013 to 12/30/2014 | 52 | 67.5 | 40 | 27.5 | $ 8.00 | $ 12.00 | $ 500.00 | $ 650.00 | $ 150.00 | **$ 7,800.00** | 5 | $ 40.00 | $ 2,080.00 | |
| **2015** | | | | | | | | | | | | | | |
| 12/31/2014 to 12/30/2015 | 52 | 67.5 | 40 | 27.5 | $ 8.75 | $ 13.13 | $ 500.00 | $ 710.94 | $ 210.94 | **$ 10,968.75** | 5 | $ 43.75 | $ 2,275.00 | |
| **2016** | | | | | | | | | | | | | | |
| 12/31/2015 to 12/30/2016 | 52 | 67.5 | 40 | 27.5 | $ 9.00 | $ 13.50 | $ 500.00 | $ 731.25 | $ 231.25 | **$ 12,025.00** | 5 | $ 45.00 | $ 2,340.00 | |
| **2017** | | | | | | | | | | | | | | |
| 12/31/2016 - 06/12/2017 | 23.29 | 61.5 | 40 | 21.5 | $ 11.00 | $ 16.50 | $ 700.00 | $ 794.75 | $ 94.75 | **$ 2,206.73** | 2 | $ 22.00 | $ 512.38 | |
| 6/13/2017-12/30/2017 | 28.57 | 61.5 | 40 | 21.5 | $ 11.00 | $ 16.50 | $ 700.00 | $ 794.75 | $ 94.75 | **$ 2,707.01** | 2 | $ 22.00 | $ 628.54 | Begins work as driver |
| **2018** | | | | | | | | | | | | | | |
| 12/31/2017 - 10/14/2018 | 41 | 61.5 | 40 | 21.5 | $ 13.00 | $ 19.50 | $ 700.00 | $ 939.25 | $ 239.25 | **$ 9,809.25** | 2 | $ 26.00 | $ 1,066.00 | |
| | | | | | | | | | **NYLL Wages Owed** $ 45,703.98 | | | **SOH Owed** $ 8,953.04 | | |
| **FLSA** | | | | | | | | | | | | | | |
| **2016** | | | | | | | | | | | | | | |
| 12/20/2016 to 12/30/2016 | 1.43 | 67.5 | 40 | 27.5 | $ 7.25 | $ 13.50 | $ 500.00 | $ 661.25 | $ 161.25 | **$ 230.59** | | | | |
| **2017** | | | | | | | | | | | | | | |
| 12/31/2016 - 06/12/2017 | 23.29 | 61.5 | 40 | 21.5 | $ 7.25 | $ 16.50 | $ 700.00 | $ 644.75 | $ - | **$ -** | | | | |
| 6/13/2017-12/30/2017 | 28.57 | 61.5 | 40 | 21.5 | $ 7.25 | $ 16.50 | $ 700.00 | $ 644.75 | $ - | **$ -** | | | | |
| **2018** | | | | | | | | | | | | | | |
| 12/31/2017 - 10/14/2018 | 41 | 61.5 | 40 | 21.5 | $ 7.25 | $ 19.50 | $ 700.00 | $ 709.25 | $ 9.25 | **$ 379.25** | | | | |
| | | | | | | | | | **FLSA Wages Owed** $ 609.84 | | | | FLSA total not included in Total Wages owed since OT wages are for overlapping time periods |
| **Total Wages Owed:** | $  54,657.02 | | | | | | | | | | | | | |
| **Liquidated Damages:** | $  54,657.02 | | | | | | | | | | | | | |
| **Wage Theft Prevention Act Notice Penalties** | $  10,000.00 | | | | | | | | | | | | | |
| **Total Damages:** | $ 119,314.04 | | | | | | | | | | | | | |

| **_Lopez et al.  v.  Lucero Produce II Corp. et al._  No. 19-CV-11619 (ALC)** | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Flor de Maria Ruano Damages Computation** | | | | | | | | | | | |
| **NYLL Unpaid Wages** | | | | | | | | | | | |
| **Date Range** | **Appx. # Weeks** | **Appx. Hours Worked/Wk** | **# Regular Hrs** | **# OT Hours** | **Minimum Wage** | **OT Rate** | **Amount Paid Per Week** | **Amount Earned Per Week** | **Amount Owed Per Week** | **Amount Owed for Date Range** | |
| **2017** | | | | | | | | | | | |
| 7/4/2017 - 12/30/2017 | 25.71 | 60 | 40 | 20 | $ 11.00 | $ 16.50 | $ 600.00 | $ 770.00 | $ 170.00 | **$ 4,370.70** | |
| **2018** | | | | | | | | | | | |
| 12/31/2017 - 8/14/2018 | 33.29 | 60 | 40 | 20 | $ 13.00 | $ 19.50 | $ 600.00 | $ 910.00 | $ 310.00 | **$ 10,319.90** | |
| 8/14/2018 - 8/20/2018 | 1 | 55 | 40 | 15 | $ 13.00 | $ 19.50 | $ 550.00 | $ 812.50 | $ 262.50 | **$ 262.50** | |
| 8/21/2018 - 8/27/2018 | 1 | 52 | 40 | 12 | $ 13.00 | $ 19.50 | $ 624.00 | $ 754.00 | $ 130.00 | **$ 130.00** | |
| 8/28/2018 - 10/9/2018 | 6.14 | 50 | 40 | 10 | $ 13.00 | $ 19.50 | $ 624.00 | $ 715.00 | $ 91.00 | **$ 558.74** | |
| 10/10/2018 - 10/17/2018 | 1 | 40 | 40 | 0 | $ 13.00 | $ 19.50 | $ 520.00 | $ 520.00 | $ - | **$ -** | |
| | | | | | | | | **NYLL Wages Owed** | | **$ 15,641.84** | |
| **FLSA Unpaid Wages** | | | | | | | | | | | |
| **2017** | | | | | | | | | | | |
| 7/4/2017 - 12/30/2017 | 25.71 | 60 | 40 | 20 | $ 7.25 | $ 16.50 | $ 600.00 | $ 620.00 | $ 20.00 | **$ 514.20** | |
| **2018** | | | | | | | | | | | |
| 12/31/2017 - 8/14/2018 | 33.29 | 60 | 40 | 20 | $ 7.25 | $ 19.50 | $ 600.00 | $ 680.00 | $ 80.00 | **$ 2,663.20** | |
| 8/14/2018 - 8/20/2018 | 1 | 55 | 40 | 15 | $ 7.25 | $ 19.50 | $ 550.00 | $ 582.50 | $ 32.50 | **$ 32.50** | |
| 8/21/2018 - 8/27/2018 | 1 | 52 | 40 | 12 | $ 7.25 | $ 19.50 | $ 624.00 | $ 524.00 | $ - | **$ -** | |
| 8/28/2018 - 10/9/2018 | 6.14 | 50 | 40 | 10 | $ 7.25 | $ 19.50 | $ 624.00 | $ 485.00 | $ - | **$ -** | |
| 10/10/2018 - 10/17/2018 | 1 | 40 | 40 | 0 | $ 7.25 | $ 19.50 | $ 520.00 | $ 290.00 | $ - | **$ -** | |
| | | | | | | | | **FLSA Wages Owed** | | **$ 3,177.40** | FLSA total not included in total wages owed since wages owed are for |
| **Total Wages Owed:** | $ 15,641.84 | | | | | | | | | | |
| **Liquidated Damages:** | $ 15,641.84 | | | | | | | | | | |
| **Wage Theft Prevention Act Notice Penalties** | $ 10,000.00 | | | | | | | | | | |
| **Compensatory Damages for Emotional Distress (Retaliation Claims)** | $ 75,000.00 | | | | | | | | | | |
| **Total Damages:** | $ 116,283.68 | | | | | | | | | | |

# Exhibit 3

| Lopez et al. v. Lucero Produce II Corp. et al. No. 19-CV-11619 (ALC) | | | |
|---|---|---|---|
| | | NYLAG Fee Detail | |
| | | | |
| Date of Service | Time Spent | Caseworker | Activity Details |
| 6/30/2020 | 10 | ANAMARIA SEGURA | SDNY Mediation |
| 06/29/2020 | 2.5 | ANAMARIA SEGURA | Prep for Mediation |
| 06/29/2020 | 1.2 | ANAMARIA SEGURA | Prep for Mediation w/ E.M.Lopez Perez |
| 06/26/2020 | 1.1 | ANAMARIA SEGURA | Prep for Mediation w/ O. Perez & F. Ruano |
| 06/25/2020 | 4.8 | ANAMARIA SEGURA | Pre-Mediation Statement; Review Disclosures; Compile Discovery Index |
| 06/24/2020 | 10.5 | ANAMARIA SEGURA | Draft, Revise Mediation Statement & Compile Exhibits |
| 06/23/2020 | 5.5 | ANAMARIA SEGURA | Pre-Mediation Statement; Legal Research |
| 06/17/2020 | 0.5 | ANAMARIA SEGURA | Prep for Pre-Mediation TC (Review pleadings, disclosures) |
| 06/17/2020 | 0.3 | ANAMARIA SEGURA | Mediation Statement Outline |
| 06/17/2020 | 1.2 | ANAMARIA SEGURA | Pre-Mediation Call w/ Mediator & Opposing Counsel |
| 06/17/2020 | 0.1 | ANAMARIA SEGURA | TC to Client Estanislao Martin Perez |
| 06/16/2020 | 0.1 | ANAMARIA SEGURA | TC to Client Flor de Maria Ruano |
| 06/03/2020 | 0.7 | ANAMARIA SEGURA | TC w/ L. Malamut re: Next Steps to prep for Mediation |
| 05/29/2020 | 4.6 | ANAMARIA SEGURA | Modified Wage Calculations, Prepared Pre-Mediation Disclosures, Drafted Cover Letter |
| 12/02/2019 | 0.7 | ANAMARIA SEGURA | Reviewed & Revised Draft Complaint |
| 11/19/2019 | 1.5 | ANAMARIA SEGURA | Continue Drafting Complaint |
| 11/19/2019 | 1.8 | ANAMARIA SEGURA | Client Meeting w/ 3 Plaintiffs to Review Complaint, Sign Retainers |
| 11/18/2019 | 2.4 | ANAMARIA SEGURA | Review of File, Drafting Complaint |
| 10/04/2019 | 1.2 | ANAMARIA SEGURA | Review of Case Notes from F. Vargas & K. Bromberg |
| 10/04/2019 | 1.2 | ANAMARIA SEGURA | Met w/ F. Ruano, E. Martin Perez, O. Perez Sanchez |
| 6/30/2020 | 10 | LAYLA MALAMUT | SDNY Mediation |
| 06/23/2020 | 3 | LAYLA MALAMUT | research on damages under FLSA/NYLL retal |
| 06/23/2020 | 1.5 | LAYLA MALAMUT | reviewing timecards & updating excel chart |
| 06/22/2020 | 5 | LAYLA MALAMUT | reviewing timecards and comparing to our damages |
| 05/29/2020 | 0.1 | LAYLA MALAMUT | Telephone Call (E.M. Perez Lopez) |
| 05/29/2020 | 0.1 | LAYLA MALAMUT | Telephone Call (F. Ruano) |
| 05/29/2020 | 0.1 | LAYLA MALAMUT | Telephone Call (O. Perez Sanchez) |
| 12/13/2019 | 0.5 | LAYLA MALAMUT | Telephone Call |
| 11/20/2019 | 0.5 | LAYLA MALAMUT | Telephone Call (O. Perez Sanchez) |
| 10/16/2019 | 1 | LAYLA MALAMUT | Wage Calculations |
| 10/04/2019 | 2 | LAYLA MALAMUT | Meeting |
| | | | |
| A. Segura Hours: | 51.9 | | |
| L. Malamut Hours | 23.8 | | |

| | | | |
|---|---|---|---|
| A. Segura Rate | $    425.00 | | |
| L. Malamut Rate | $    150.00 | | |
| | | | |
| A. Segura Fees: | $  22,057.50 | | |
| L. Malamut Fees: | $   3,570.00 | | |
| | | | |
| **Fees Through 6/30/2020** | **$  25,627.50** | | |